IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GREGORY A. GAUBATZ, | CASE NO. 1:25-CV-00806-CEH |
| Plaintiff, | JUDGE CARMEN E. HENDERSON<br>UNITED STATES MAGISTRATE JUDGE |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant, | |

## I. Introduction

Gregory A. Gaubatz ("Gaubatz" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 6). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On February 5, 2016, Gaubatz filed applications for DIB and SSI, alleging a disability onset date of August 6, 2013. (ECF No. 5, PageID #: 34). The applications were denied initially and upon reconsideration, and Gaubatz requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 12, 2018, ALJ Deborah F. Sanders held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*See id.* at PageID

1

#: 62-118). On, July 27, 2018, ALJ Sanders issued a partially favorable written decision finding Gaubatz was not disabled before April 10, 2017, but that he became disabled and entitled to SSI benefits effective that date. (ECF No. 5, PageID #: 34-49). The ALJ's decision became final on February 15, 2019, when the Appeals Council declined further review. (*Id.* at PageID #: 24-26). Plaintiff appealed the decision to the United States District Court for the Southern District of Ohio. (*Id.* at PageID #: 1782). On June 3, 2020, that court vacated the nondisability finding and remanded the case to the Commissioner for further proceedings based on the ALJ's failure to properly consider the medial opinions. (*Id.* at PageID #: 1799-1817).

On remand, the Appeals Council affirmed the portion of the decision finding Gaubatz disabled beginning on April 10, 2017, and limited the ALJ's review to the period before that date. (*Id.* at PageID #: 1821). ALJ Stuart Adkins held a supplemental hearing on September 20, 2021, during which Gaubatz, with his counsel, and an impartial vocational expert again testified. (*Id.* at PageID #: 1729-50). On November 18, 2021, ALJ Adkins issued his written decision, finding Gaubatz was not disabled from August 6, 2013, the alleged onset date, through April 10, 2017. (*Id.* at PageID #: 1706-22). The Appeals Council declined to assume jurisdiction on May 18, 2022. (*Id.* at PageID #: 1696-99). Gaubatz appealed the decision to the United States District Court for the Northern District of Ohio, and the assigned magistrate judge recommended that ALJ's Adkins' decision be vacated because he failed to apply the proper legal standards in evaluating Gaubatz's gout-related subjective symptom complaints. (*Id.* at PageID #: 3395-3426). On February 3, 2023, the district court accepted the recommendation and remanded the matter for further proceedings. (*Id.* at PageID #: 3427-28).

Following the second remand, ALJ Irma Flottman held a hearing on November 16, 2023. (*See id.* at PageID #: 3350-61). Gaubatz did not attend the hearing; however, his representative

2

appeared and waived his testimony. (*Id.* at PageID #: 3352-53). A vocational expert testified at the hearing. (*Id.* at PageID #: 3356-61). On January 24, 2024, ALJ Flottman issued her written decision, finding Gaubatz had not been under a disability from August 6, 2013, the alleged onset date, through March 31, 2015, Gaubatz's date last insured for DIB purposes, or from February 15, 2016, the application date, through April 10, 2017. (*Id.* at PageID #: 3326-42). The Appeals Council declined to assume jurisdiction on February 21, 2025. (*Id.* at PageID #: 3314-15).

On April 22, 2025, Gaubatz filed his Complaint in the instant action to challenge the Commissioner's final decision—specifically, ALJ Flottman's January 24, 2024 decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 10, 11). Gaubatz asserts a single assignment of error: "Whether the ALJ reversibly erred in evaluating Gaubatz's symptom severity pursuant to SSR 16-3p and failed to build a logical bridge between the evidence and the ALJ's rejection of Gaubatz's reported gout flare-ups, despite that this was at the heart of the Court's Prior Remand Order." (ECF No. 8 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized Gaubatz's testimony from across the multiple hearings:

> The claimant alleged disability due to severe PTSD, anxiety, and panic disorder. He complained of memory loss. He reported pain and loss of full use of his left arm due to a severe fracture. He complained of gout and arthritis. He reported that he had crippled fingers on his right hand. The claimant also complained of dyslexia and attention deficit hyperactivity disorder. The claimant reported the need for a cane or wheelchair during flares of gout symptoms. He did not report the daily use of a cane. At the initial hearing, the claimant reported that he was a caregiver for his father for a year prior to his father's death. He indicated that he cooked for him, fed him, and cared for his father with the assistance of hospice. He subsequently reported being a caregiver for a female friend prior to her death. He indicated he suffered panic attacks just prior to and after her death in December 2016. The claimant reported a history

3

> of crippled fingers of his right hand. He complained of gout in his feet and plantar fasciitis. He complained of numbness in his feet and hands. He also reported a history of a right shoulder dislocation. He indicated that he was starting to lose muscle mass and range of motion beginning two months prior to the last hearing in February 2018. He reported that he was prescribed crutches on one occasion because he was unable to walk due to gout. He reported the use of a cane during gout flares. He also reported that his knees pop. He complained of continued pain following an elbow surgery. He also reported a history of a learning disorder in childhood with a subsequent diagnosis of an intermittent anger disorder and bipolar disorder. (Exhibits 22A; 2E; 4E; 6E; 7E; 11E).

(ECF No. 5, PageID #: 3334).

### B. Relevant Medical Evidence

The ALJ also summarized Gaubatz's health records and symptoms relevant to his severe impairments:

> Regarding the claimant's gout, the record indicates the claimant complained of warmth, swelling, and tenderness in his feet and toes on occasion. He complained of flares of symptoms every month. (Exhibits 1F/45; 2F/79; 3F/7) Treatment records showed he exhibited mild erythema of the great toes in April 2015 (Exhibit 3F/115). The claimant sought emergency treatment for a gout attack in his left foot in May 2015 and right foot in November 2016 and December 2016 (Exhibits 3F/7; 9F/9, 32). Treatment records in August 2016 noted he walked with a limp and the use of a cane (Exhibit 3F/26). Diagnostic imaging of his right foot in November 2016 showed a possible contusion (Exhibits 2F/14; 3F/45). Abnormal findings on examination showed he exhibited swelling and redness in his right foot with erythema (Exhibit 2F/13, 79) Subsequent physical examination showed he exhibited normal motor strength and intact sensations in his bilateral feet without erythema (Exhibits 2F/82, 129; 3F/8). Diagnostic testing showed he exhibited elevated levels of uric acid with levels of 9.2mg/dL (Exhibit 2F/80, 82). The claimant was prescribed medication, including indomethacin, colchicine, hydrocodone, and Vicodin, to treat his gouty flares. However, the claimant declined to take medication such as allopurinol to preclude gout attacks. (Exhibits 1F/146-148; 2F/80, 82; 9F/32) The claimant also continued to consume alcohol and smoke despite advice to cease such activities (Exhibits 1F/134, 175; 2F/316,332, 421, 459). He was prescribed crutches following a gouty attack in May 2015

(Exhibit 2F/145).

Laboratory testing on November 16, 2016, revealed a uric acid level of 9.2mg dL resulting in a diagnosis of gout (Exhibit 2F/82). The claimant alleged pain, swelling, discoloration and difficulty ambulating aggravated by alcohol use and requiring a cane during flare-ups (Exhibits 1F, 2F, 3F and 5F). However, treatment notes dated November 5, 2015, indicate that claimant was ambulating without mention of the need for an ambulatory device (Exhibit 3E 115). The claimant was walking normally on May 9, 2016 and August 29, 2016 (Exhibit 3F/58, 91).

The claimant has a history of PTSD that preceded his military service with a history of childhood abuse (Exhibit 1F/124). During the applicable period, the record indicates the claimant complained of difficulty concentrating, memory deficits, intermittent auditory hallucinations, avoidance of crowds, and avoidance of the others generally. He reported that he was scared to leave his house or be around people for more than a few minutes. He complained of anger, irritability, hypervigilance, average interest, avoidance of social activity, intrusive recollections, nightmares, poor memory, poor concentration, fair appetite, and poor to fair sleep. He complained of anxiety and depression. He complained of constant stress that precluded him from leaving his home at times. He reported that he cared for his dying father until his power of attorney was revoked. He complained of racing thoughts. He reported drinking four to six beers daily. He complained of agoraphobia on occasion. He reported that he was easily awakened by noise. He complained of frequent nightmares. (Exhibits 1F/73-74, 113-114, 171, 194, 218, ,220, 226, 242-245; 2F/36; 3F/108). The claimant was alert, attentive, oriented, cooperative with normal hygiene and grooming (Exhibit 1F/75, 81, 109). However, mental status examinations also showed he exhibited euthymic mood, normal memory, normal speech, good eye contact, normal thought processes, normal thought content, average cognition with no gross cognitive deficits, and normal psychomotor behavior. He was able to tolerate some confrontation regarding his alcohol use. (Exhibits 1F/75-76, 81, 94, 109, 115-116, 127, 173; 185, 191, 220, 246, 285; 199; 2F/403-404, 425-426, 498-499; 3F/58-59, 89-90, 91-92, 110-111; 9F/33). Abnormal findings on mental status examinations showed he exhibited an anxious, angry, sad, or frustrated affect with an anxious, depressed, angry, or frustrated mood. He exhibited impaired remote memory on occasion. He also exhibited limited or impaired insight, particularly with respect to his continued use of alcohol and its effect on his overall mental status. He occasionally exhibited poverty of speech, tangential

5

> thoughts, an expansive affect, hypervigilance, staring eye contact, guarded or agitated behavior. He also reported paranoia and hallucinations on occasion. (Exhibit 1F/75-76, 109, 127, 185, 220, 239, 246, 270; 2F/403-404, 426).
>
> Treatment records showed the claimant's memory was intact on October 30, 2013 (Exhibit 1F/246). His immediate and recent memory recall were intact on August 26, 2014 (Exhibit 1F/185). He exhibited intact immediate, recent, and remote memory on March 23, 2017 (Exhibit 2F/426). Mental status examinations showed the claimant was attentive without cognitive deficits on November 6, 2015, May 9, 2016, and August 29, 2016 (Exhibits 1F/94; 2F/498-499; 3F/91-92). On March 23, 2017, mental status examinations showed he exhibited intact concentration and attention (Exhibit 2F/426). Group therapy notes dated April 6, 2017, indicated that the claimant appeared to be very attentive during the session (Exhibit 2F/390). The claimant was prescribed medication, including venlafaxine, trazodone, and hydroxyzine, to treat his symptoms with significant improvement reported (Exhibit 1F/77, 118). The claimant was diagnosed with major depressive disorder, anxiety disorder, alcohol disorder, substance addiction disorder, and PTSD (Exhibit 1F/73; 219-220). The claimant reported excessive consumption of alcohol, as well as a history of use of cocaine and cannabis (Exhibits 1F/126, 180, 199, 227). He reported conflict regarding an inheritance from his father (Exhibit 1F/ 124). He complained of frequent fights (Exhibit 8F/306). He had a history of outpatient and residential care for his alcohol use disorder (Exhibit 2F/451). On September 6, 2013, progress notes state the claimant was offered various treatment options and declined treatment at that time (Exhibit 1F/282). The claimant declined to take medication on December 18, 2013 (Exhibit 1F/224). The claimant also denied depression or anxiety in May 2015. In April 2016 he denied depression and anxiety. Progress notes showed he reported no hallucinations (Exhibits 1F/149; 2F/499). The claimant admitted he does not take his medication on a regular basis on May 9, 2016 (Exhibit 2F/529). The claimant failed to report depression or anxiety on June 19, 2016 (Exhibit 2F 518). Progress notes dated July 24, 2016, indicated the claimant had not completed substance abuse programming and missed a number of group therapy sessions (Exhibit 2F/105). The claimant reported on February 6, 2017, that he got arrested going over to a friend's house to see if the friend was coming back to the claimant's house (Exhibit 2F/453).

(ECF No. 5, PageID #: 3335-36).

IV. **The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 6, 2013, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. From August 6, 2013, through March 31, 2015, and from February 15, 2016, through April 10, 2017, the claimant had the following severe impairments: gout, major depressive disorder, anxiety disorder, alcohol disorder, substance addition [sic] disorder, and PTSD (20 CFR 404.1520(c) and 416.920(c)).

4. From August 6, 2013, through March 31, 2015, and from February 15, 2016, through April 10, 2017, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that from August 6, 2013, through March 31, 2015, and from February 15, 2016, through April 10, 2017, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently. He could stand and/or walk for about four hours and sit for about six hours in an eight-hour workday. He could never climb ladders ropes and scaffolds. He could occasionally reach overhead with the right upper extremity. He could frequently handle, finger, and feel with the left upper extremity. He should have avoided unprotected heights and dangerous machinery. He could have performed simple routine tasks but not at a production rate pace and without strict performance quotas (i.e., no assembly line work). He could have tolerated occasional superficial contact with supervisors and co-workers with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. He could not have interacted with the general public. He could have performed no jobs requiring teamwork or tandem tasks. He could not have

> performed jobs with over-the-shoulder supervision. He could have tolerated occasional changes to a routine work setting defined as one to two per week.
>
> 6. The claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> …
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 6, 2013, through March 31, 2015, or from February 15, 2016, through April 10, 2017. (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 5, PageID #: 3328-29, 3331, 3333-34, 3340-41).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535,

8

538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Gaubatz raises a single issue on appeal, challenging whether "the ALJ reversibly erred in evaluating Gaubatz's symptom severity pursuant to SSR 16-3p and failed to build a logical

9

bridge between the evidence and the ALJ's rejection of Gaubatz's reported gout flare-ups, despite that this was at the heart of the Court's Prior Remand Order." (ECF No. 8 at 1).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 98-6p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the

symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Plaintiff's current arguments are best understood in the context of the prior decisions. In the November 18, 2021 decision, ALJ Adkins concluded Plaintiff retained the same RFC as ALJ Flottman did in the current decision. (ECF No. 5, PageID #: 1713-14). ALJ Adkins explained his treatment of Plaintiff's symptom testimony regarding his gout as follows:

> Overall, the claimant's allegations are not entirely consistent with the medical evidence. The claimant reported monthly flares of symptoms and indicated that he did not always seek care for his gout because there was nothing health care providers could do. However, the medical record showed he sought emergency care on a handful of occasions, each time reporting his symptoms lasted several days. Although the claimant has a history of gout with a need for a cane or crutch during severe flares of symptoms, the

11

> record reflects he declined to follow medical advice regarding dietary changes. He also declined recommendations to initiate preventative medication, suggesting the flares of symptoms did not occur with the frequency he indicated at the hearing.

(*Id.* at 1716-17).

On appeal, the magistrate judge concluded that this explanation "provided sufficiently clear reasons for rejecting Gaubatz's subjective symptoms" but concluded these reasons were "problematic." (*Id.* at PageID #: 3420). The magistrate judge explained:

> It is unclear to what dietary changes the ALJ was referring. The only ones discussed in the decision refer to Gaubatz's continued alcohol and tobacco use. (Tr. 1692). In the ordinary case, noncompliance with a prescribed form of treatment would be an adequate basis for rejecting the severity of a claimant's reported symptoms. 20 C.F.R. § 404.1530(b)-(c). But in Gaubatz's case, the ALJ found that he suffered from both alcohol use disorder and gout. (Tr. 1686). The ALJ's analysis failed to recognize the interplay between the two and the effect of Gaubatz's alcohol use disorder on his ability to comply with the recommended dietary modifications, which would be an acceptable reason to explain Gaubatz's noncompliance. 20 C.F.R. § 404.1530(b)–(c); SSR 16-3p, 2016 SSR LEXIS 4, at *23 ("We will not find an individual's symptoms inconsistent with the evidence in the record on [the basis of noncompliance with treatment] without considering possible reasons he … may not comply with treatment."). And although Gaubatz was advised to quit smoking, none of the treatment notes the ALJ cited advised Gaubatz that his tobacco use was related in any way to his gout attacks. See (Tr. 473–74, 513–14, 949, 965, 1054, 1092).
>
> As Gaubatz correctly points out, the ALJ used his refusal to pursue medication treatment with allopurinol to discount his subjective pain symptoms without addressing possible reasons for why he refused to do so. 20 C.F.R. § 404.1530(b)–(c); SSR 16-3p, 2016 SSR LEXIS 4, at *23; (Tr. 1693–94). One possible reason is the one Gaubatz himself told Dr. Sample-Eppinger when he refused allopurinol: he was uncertain of the cause of his pain (and so was Dr. Sample-Eppinger). (Tr. 2792). Another possible reason is the one Gaubatz alluded to in his testimony: his previous medication treatment had been ineffective. See (Tr. 1715–16). That reason would be consistent with Gaubatz's statement to providers that colchicine, Indocin, and Vicodin had not been effective to manage

12

> his pain. (Tr. 2888, 3217).
>
> > Similarly, that Gaubatz occasionally sought emergency medical care for his gout would not contradict his testimony explaining why he did not report flareups with greater regularity than he did. The import of Gaubatz testimony, when viewed in conjunction with the record, is that although he received medical care for multiple physical impairments, he did not report gout pain symptoms at each one because he did not think treatment would be effective. As discussed above, that reason has a basis in the record and the ALJ failed to explain why that reason was rejected.

(*Id.* at PageID #: 3420-22). Thus, the magistrate judge concluded that ALJ Adkins "failed to follow proper legal standards in evaluating Gaubatz's gout pain symptoms" and "failed to build an accurate and logical bridge between the evidence and his finding that Gaubatz's reported frequency of his gout flareups was inconsistent with the medial evidence." (*Id.* at 3422). Further, the magistrate judge concluded this error was not harmless because "the VE testified that an employer would not tolerate more than one absence per month." (*Id.* at 3422-23). Thus, remand was required. (*Id.*). The district court judge adopted the magistrate judge's findings and recommendation without objection from the Commissioner. (*Id.* at PageID #: 3427-28).

Plaintiff argues that despite the prior remand order, the current ALJ cited Plaintiff's refusal of medication to preclude gout attacks but still "failed to consider possible reasons why Plaintiff did not comply with treatment as required by SSR 16-3p." (ECF No. 8 at 10). Further, Plaintiff argues "the ALJ's symptom severity analysis failed to recognize the interplay between [Plaintiff's gout and alcohol use disorder] and how that impacted Gaubatz's ability to comply with recommended treatment." (*Id.* at 11). Plaintiff asserts the ALJ "failed to build an accurate and logical bridge between the evidence and her rejection of Gaubatz's testimony regarding the frequency of his gout flare-ups" because while "this issue was the heart of the Court's prior Remand Order," the new ALJ "simply removed the offending paragraph, and decided just not to

13

discuss or address the frequency issue this time." (*Id.* at 11-12). Additionally, Plaintiff argues that the ALJ "relied heavily on the notion that Gaubatz's mental health 'improved significantly' with medication adjustment" but "erred by selectively focusing on Gaubatz's alleged improvement during treatment and in conflating his alleged improvement with an ability to perform full-time work activity on a sustained basis." (*Id.* at 14).

The Commissioner responds that the "ALJ complied with this Court's Remand Order and considered Plaintiff's hearing testimony, the objective medical evidence, treatment history, and daily activities when determining whether his gouty arthritis was disabling" such that the ALJ's findings must stand. (ECF No. 10 at 7). The Commissioner concedes that "the ALJ cited Plaintiff's refusal to take medication and continued use of alcohol and smoking as one reason that his allegations were not consistent with the evidence but failed to recognize the interplay between his alcohol use and gout and identify treatment records showing that his tobacco use was related to his gout, as instructed by the Court." (*Id.* at 8). However, the Commissioner argues that the decision "is still supported by substantial evidence because [the ALJ] gave several reasons, some of which have not been challenged by Plaintiff, for finding his allegations not consistent with the evidence." (*Id.* at 10). Specifically, the Commissioner argues the ALJ properly relied on the objective medical evidence, Plaintiff's daily activities, and the opinions of the State agency consultants in finding Plaintiff's symptom allegations not supported. (*Id.* at 9-12). As to Plaintiff's response to mental health medication, the Commissioner argues the Court previously rejected this argument and the ALJ's decision is supported by substantial evidence. (*Id.* at 14-15).

Plaintiff replies that the medical record supports his claim that he needed an assistive device during gout flare-ups; there is no evidence that he performed the cited daily activities

14

during such flare-ups; and Plaintiff's ability "to perform some basic activities of daily living [is] not comparable to an ability to sustain full-time employment." (ECF No. 11 at 1-3).

The Court finds Plaintiff's arguments persuasive. In the current decision, ALJ Flottman relied on the same summary of Plaintiff's testimony and the same summary of the medical evidence presented in ALJ Adkins' reversed decision. (*Compare* ECF No. 5, PageID #: 1714-16 *with id.* at PageID #: 3334-36). ALJ Flottman also relied on the exact same analysis of Plaintiff's mental limitations and the various medical opinions. (*Compare id.* at PageID #: 1717-20 *with id.* at PageID #: 3337-40). In fact, as Plaintiff argues, the only apparent difference in ALJ Flottman's RFC analysis and ALJ Adkins' analysis is the omission of the paragraph containing the explanations the previous magistrate judge concluded were "problematic," which ALJ Flottman replaced with the following explanation for how she considered Plaintiff's symptom testimony in formulating the RFC:

> The onset, nature, intensity, and duration of symptoms, as well as participating and aggravating factors, have all been factored into the residual functional capacity assessment set forth herein for this claimant. (SSR 16-3p). The undersigned has found that the claimant's allegations are not generally consistent with the entire record. Furthermore, the record does not corroborate the claimant's allegations of symptom severity, and the record has multiple conflicting statements regarding the severity of the claimant's activities of daily living. The claimant's allegations that he could not work is inconsistent with the fact that he could perform a variety of daily tasks, such as walking independently in the community, preparing simple meals, shopping in the stores for needed items, and performing personal care tasks. (Exhibit 4E).

(ECF No. 5, PageID #: 3336-37).

This explanation is problematic because it wholly fails to address *any* of the issues identified by the previous magistrate judge, instead simply eliminating discussion of these issues. Given that the previous magistrate judge found the previous explanation for finding Plaintiff's

15

subjective complaints unsupported problematic, it defies logic to now ask this Court to conclude that the ALJ has now somehow satisfied her burden of providing specific reasons for discounting Plaintiff's testimony by simply eliminating the problematic language and replacing it with a generic reference to the record and Plaintiff's daily activities without any further detail or explanation. *See Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 WL 1604376, at *4 (6th Cir. June 6, 2025) ("When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Further, the ALJ's discussion of Plaintiff's "somewhat minimal daily functions" does not explain how such shows Plaintiff retained the ability to perform typical work activities. *See Rogers*, 486 F.3d at 248 (noting that "somewhat minimal daily functions are not comparable to typical work activities"). Thus, the ALJ failed to build an accurate and logical bridge supporting why she found Plaintiff's testimony regarding the severity of his gout symptoms less than credible.

The ALJ's failure to provide an adequate explanation requires remand. Plaintiff asks that the Court remand for an award of benefits while the Commissioner argues that if the Court determines remand is warranted, remand for further proceedings is more appropriate. (*See* ECF No. 8 at 15; ECF No. 10 at 16 n.8). Under Sixth Circuit precedent:

> [R]emand for an immediate award of benefits may be made under sentence four of § 405(g) "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.* (citing *Mowery v. Heckler*, 771 F.2d 996, 973 (6th Cir. 1985)).

*Wiser v. Comm'r of Soc. Sec.*, 627 F. App'x 523, 526 (6th Cir. 2015). Here, given that remand is warranted based on the failure of the ALJ to sufficiently explain his treatment of Plaintiff's

16

subjective complaints rather than a conclusion that there was not substantial evidence to support the explanation, the Court finds that remand for further proceedings is appropriate.

**VI. Conclusion**

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: December 1, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE